<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PETER S. BARON,<br><br>   Plaintiff,<br><br>   v.<br><br>JERSEY CITY INCINERATOR<br>AUTHORTY, et. al.,<br><br>   Defendants. | Civ. No.  06-5047 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

D. Gayle Loftis, Esq.
210 River Street
Hackensack, NJ 07601

 *Plaintiff,*

BRAFF, HARRIS & SUKONECK
Keith Harris, Esq.
570 W. Mt. Pleasant Avenue
P.O. Box 657
Livingston, NJ 07039

 *Attorney for Defendants.*

<u>**DEBEVOISE, Senior District Judge**</u>

  This matter comes before the court on Plaintiff, Peter S. Baron's motion to enforce a Settlement Agreement and Release ("Agreement") and to correct an alleged mathematical miscalculation regarding a term in Paragraph 2.2 of the Agreement.  Paragraph 2.2 provides for a lump sum payment to Baron for accrued sick, vacation and personal time.  The parties disagree as to the proper monetary value for the lump sum payment.  Baron seeks to have the court change Paragraph 2.2 so that it recites a lump sum payment of $20,557.80, instead of the

$15,991.34 contained in the Agreement executed by the parties.  The underlying dispute arises from Baron's alleged wrongful termination by the Defendants, the Jersey City Incinerator Authority ("JCIA") and Oren K. Dabney, Sr., the Executive Director of the JCIA (collectively, "Defendants").  Because Baron has not presented clear and convincing evidence that Paragraph 2.2 of the Agreement should be modified; and because the court will not alter a settlement agreement to reflect a payment term that the JCIA Board has not approved, the motion will be denied, and the Agreement, in the form executed by both parties in June 2009, will represent the final agreement between the parties to settle this matter.

## I.     Background

The JCIA hired Baron as a sweeper in November 2001 and he was promoted to the position of manager of the sweeper department in November 2002.  On June 21, 2005, Baron alleges he was injured at work and has not been authorized by JCIA doctors to return since that date.  Baron states that Dabney informed him by letter that if he did not return to work by April 3, 2006, he would be terminated.  He was terminated on April 10, 2006.

Baron filed the Complaint on October 20, 2006, alleging claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights; 42 U.S.C. § 12101 for violations of the Americans with Disabilities Act; N.J. Stat. Ann. § 10:6-2 for violations of the New Jersey Civil Rights Act; and N.J. Stat. Ann § 10:5-5q for discrimination based on his disability.  The parties entered discovery.

On March 11, 2009 the Baron met with Defendants for a settlement conference before the court.  During the conference, they reached an agreement in principle.  One term concerned the lump-sum payment of accrued sick and vacation time.  The parties disagree as to the specificity of the agreement that was reached that day regarding the lump-sum payment.  Baron contends

that the Defendants agreed to pay him for the equivalent of 940 hours of accrued time at his normal rate of pay.  At the time, Baron believed that 940 hours of pay would be worth between $19,740.00 and $20,680.00, since Baron believed his hourly rate at the time of his termination was some figure between $21.00 and $22.00.  (Loftis Decl. ¶ 5.4; Baron Cert. ¶ 7.)  Defendants counter that no specific sum of hours was discussed at the conference, and that the parties agreed only that the JCIA Payroll Department would determine the number of hours to which Baron was entitled.  (Hawkes Decl. ¶ 3.)

The parties began to negotiate the details of the agreement after the conference.  On March 18, 2009, Gayle Loftis, Esq., the attorney for Baron, sent Keith Harris, Esq., the attorney for Defendants, a proposed version of the agreement, which stated:

> Baron shall receive a one-time, lump-sum gross payment in the sum of $[blank], made payable to him as payment of all accrued, but previously unpaid, sick, vacation and personal time.  It is understood that the hours which will be paid amount to the monetary equivalent of 940 hours and that the payment will be subject to all requisite tax and other mandatory deductions.

(Loftis Decl. Ex. B.)  On April 24, Harris wrote an email to Loftis stating:

> I have heard back from Mr. Dabney.  The Board approved the settlement with the following conditions:  (1) Baron will be paid until age 55; (2) Medical coverage will be provided only for him, not his family members, if any.  Your fee of $15,000 was approved.

(Id. Ex. C.)  Defendants did not provide the court with any documentation of the Board proceedings referred to in the April 24th email.  On April 28 at 1:10 p.m. Harris wrote an email to Loftis that specified changes to the legal language in sections of the agreement unrelated to the lump-sum payment.  (Id. Ex. F.)  He also stated:

> At provision 2.2 I believe that the gross lump sum payment to Baron will equal $15,991.34.  I am waiting to confirm with Mr. Hawkes.

(Id.)  Loftis communicated to Harris via email on April 28 at 5:04 p.m. that Baron had accepted the two adjustments requested by the Board.  (Id. Ex. E)  On May 3, Loftis provided Harris with a revised draft that included the $15,991.34 term in Paragraph 2.2.  (Id. Ex. G.)  On May 26, the Executive Session Minutes of the Regular Board Meeting of the JCIA Board of Commissioners ("Session Minutes") reflected, in relevant part:

> Counsel Hawkes explained regarding the Peter Baron case basically what we've done is given him what he is entitled to, vacation time, sick time and health benefits for himself until he is 55 years old.  […]  The board was in agreement for Counsel Hawkes and C.E.O. Dabney to move forward with a settlement based on the terms discussed.

(Hawkes Decl. Ex. A.)  Defendants did not provide any additional information about the May 26th Board meeting.  On June 3 at 12:56 p.m., Harris wrote Loftis an email stating:  "I heard from Mr. Hawkes yesterday that the revised release and its terms are acceptable to the JCIA."  (Id. Ex. I.)  Loftis responded by asking,

> How was the value of the 940 hours calculated by the JCIA?  Can you provide me with a calculation so I can verify the hours/value and insure [sic.] that this fulfills the intent of what he agreed to.

(Id.)  On June 12, Dabney and Hawkes executed the agreement on behalf of the JCIA and on June 15, Baron executed the agreement as well.  Loftis states that on June 16, a staff member inadvertently returned the signed document to Harris's office, where it was received on June 17.  The version executed by the parties contained the following Paragraph 2.2:

> Baron shall receive a one-time, lump-sum payment of $15,991.34, made payable to him as payment of all accrued, but previously unpaid sick, vacation and personal time.  It is understood that the hours which will be paid amount to the monetary equivalent of 940 hours, that the payment will be subject to all requisite tax and other mandatory deductions, and that a W-2 will be issued for that payment;

4

(Harris Decl. Ex. A.)  On June 23, Loftis received a memorandum, dated June 17, 2009, via email from Harris.  (Loftis Decl. Ex. N.)  The memorandum, written by Brenda Boyd, the JCIA's Payroll/Personnel Coordinator, provided the calculation for the $15,991.34 figure:

> Please be advised, we arrived at this calculation by adding 2 years plus the current year of vacation time which totals $7873.20  Then we calculated the Sick hours at the time of termination at the 80% which totals $8118.14.  The cumulative total for Vacation and Sick is $15991.34.
>
> Vacation Hours 2 yrs + Current Yrs.  360 Hours x $21.87           = $7873.20
> Sick Hours at time of Termination    464 Hours x $21.87 x 80%   = $8118.14
>                                                                                                           $15991.34

(Id.)  Loftis responded to Harris on June 24 by email, stating that she disputed the calculations provided by Boyd and requested an addendum to the agreement correcting the calculation.  (Id. Ex. O.)  Loftis based her contentions on a document reflecting Baron's 2006 employee attendance record, which was produced by Defendants during discovery and contains a tally of sick days due ("434 hrs") and vacation time due ("346 hrs + 160 hrs = 506 hrs").  (Id.)

After discussion with Hawkes and Harris failed to produce the desired result, Loftis filed the present motion on behalf of Baron on September 10.  On October 5, the court held oral arguments, during which the court requested that Harris provide the court with a copy of the resolution indicating the settlement terms the JCIA Board had approved.  On October 9, Defendants filed an additional statement with the court, two additional affidavits (Boyd and Hawkes), and a number of exhibits, including the above-referenced Session Minutes.  On October 12, Baron filed a response to the October 9 filing addressing the additional arguments and documents.  Baron did not object to the court's consideration of the material Defendants provided to the court that went beyond the court's specific request for evidence of Board action regarding the settlement.

## II. Discussion

Baron styled this motion as a motion to enforce settlement and a motion to correct a clerical mistake pursuant to Fed. R. Civ. P. 60(a).[1] As a preliminary matter, the court notes that Rule 60(a) is inapplicable to this case in its current posture. Baron is not seeking to modify any existing order or judgment issued by this court. In fact, the court has not entered any order in regards to the settlement. Instead, Baron seeks to have the court alter, and thereafter enforce, an Agreement entered into by the parties. The court will consider the present motion, therefore, as a motion for the alteration and enforcement of a settlement agreement.

Baron contends that the disputed term is merely a mathematical miscalculation that the court should correct in order to reflect the true intentions of the parties. Baron argues that the true intention of the parties for Paragraph 2.2 was to compensate Baron for 940 hours of sick, vacation and personal time. Defendants counter that the disagreement over Paragraph 2.2 is evidence that no "meeting of the minds" was achieved, and thus, no agreement was formed. Defendants strenuously contend that the Board never agreed to pay Baron for 940 hours of time, but rather agreed that Baron should be paid whatever amount the JCIA calculated he was owed. Further, Defendants note that the JCIA cannot be bound by the $20,557.80 figure proposed by Baron, since the Board never agreed to that sum. Since the JCIA is a public entity, it must act by formal action and cannot be bound in the absence of such action.

Under New Jersey law, a settlement agreement is a form of contract, and courts must look to the general rules of contract law to resolve disputes over a settlement agreement. Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Borough of

---

[1] Rule 60(a) provides, in relevant part, that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."

Haledon v. Borough of N. Haledon, 358 N.J. Super. 289 (App. Div. 2003)).  New Jersey public policy strongly favors the settlement of litigation.  Nolan v. Lee Ho, 120 N.J. 465 (1990) (citing Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961), cert. denied, 35 N.J. 61 (1961)).  Consequently, New Jersey courts have refused to vacate final settlements absent compelling circumstances.  Nolan, 120 N.J. at 470.  In general, settlement agreements will be honored "absent a demonstration of fraud or other compelling circumstances."  Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J.Super. 130, 136 (App. Div. 1974)).  Before vacating a settlement agreement, our courts require "clear and convincing proof" that the agreement should be vacated.  DeCaro v. DeCaro, 13 N.J. 36 (1953) (determining that appellant had failed to establish fraud, undue haste, pressure, or unseemly conduct in settlement negotiations); Borough of Haledon, 358 N.J. at 305.  Generally, the plain language of a settlement agreement is entitled to a presumption of validity.  Mortellite, 460 F.3d at 492 (citing Peter W. Kero, Inc. v. Terminal Const. Corp., 6 N.J. at 361).  "It is a general rule that when a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in signing."  Peter W. Kero, Inc. v. Terminal Const. Corp., 6 N.J. 361, 368 (1951); see Cooper v. Borough of Wenonah, 977 F. Supp. 305 (D.N.J. 1997) (citing Peter W. Kero, 6 N.J. at 368).

   In the present matter, a final agreement was reached between the parties when both parties executed the document in June.  Baron does not contend that the settlement was induced by fraud or any unseemly conduct by the Defendants.  Baron signed the settlement agreement while represented by counsel, after months of negotiation.  Baron believed before he signed the Agreement that Paragraph 2.2 should provide for a payment of between $19,740.00 and

7

$20,680.00, based on his own estimate of 940 hours at his regular hourly rate. However, when the Agreement provided for a sum of $15,991.34, he nonetheless executed the document. That the executed document was inadvertently returned to Defendants does not provide a basis for its alteration. Such an error does not constitute clear and convincing evidence that the agreement should be vacated. Rather, Baron's signature on the document raises the presumption that he read, understood and assented to its terms, and Baron has not presented sufficient evidence to defeat that presumption.

Furthermore, Defendants, as a municipal corporation, cannot be required to make a payment to which the Board did not agree. Governmental bodies must act by formal action with respect to contracts and consent to the settlement of litigation. Jersey City v. Roosevelt Stadium Marina, 210 N.J. Super. 315, 327 (App. Div. 1986) (citing DeMuro v. Marinti, 2 N.J. 516, 521 (1949)), cert. denied, 110 N.J. 152 (1988). In Roosevelt Stadium Marina, the New Jersey Superior Court, Appellate Division, vacated an order entered by the Law Division that was allegedly entered as a result of a settlement. However, the Appellate Division found that no settlement had been reached as the municipal attorney did not have the consent of the governmental body to settle. Here, similarly, the court must deny Baron's motion because the court is unable to alter the Agreement to reflect a monetary term that the Board has not approved.

The evidence shows that on May 26, the Board approved the sum of $15,991.34 for Paragraph 2.2 of the Agreement. The Session Minutes unfortunately lack any specific detail regarding the disputed term. But, the version of the Agreement that was in circulation between the parties on May 26 when the Board meeting occurred must have included the $15,991.34 because it had been a part of the Agreement since May 3rd. Further, the June 3rd email from Harris to Loftis stated that the Board had approved the "revised release," which seems to refer to

8

the version Loftis provided on May 3.  (Loftis Decl. Ex. I.)  Therefore, absent contrary evidence, the court can only conclude that the version of the Agreement the Board approved on May 26 stated that the sum of $15,991.34 would be paid to Baron as compensation for his accrued but previously unpaid sick, vacation and personal time.  The court can see no reason to alter that term of the Agreement.  Baron's motion will be denied and the Agreement, as executed by the parties in June 2009, will embody the final settlement agreement between them.

### III.   Conclusion

For the foregoing reasons, Baron's motion is denied.  The court will enter an order implementing this opinion.


    **s/ Dickinson R. Debevoise**
Dickinson R. Debevoise, U.S.S.D.J.

Dated:  December 7, 2009